IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| VICTORIA L. LIERZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 08-2313-JAR-DWB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  Finding the Commissioner failed to consider the medical opinion of plaintiff's treating physician, Dr. Davis, the court recommends the Commissioner's decision be REVERSED and judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g), REMANDING the case for further proceedings consistent with this opinion.

**I.   Background**

Plaintiff's applications for SSI and DIB were denied initially and upon reconsideration, and in due course a hearing was held before Administrative Law Judge (ALJ) George M. Bock. (R. 20, 28-30, 47-48, 69-80, 256-62, 268-94).  At the hearing, plaintiff was represented by a non-attorney representative, and testimony was taken from plaintiff, plaintiff's mother, a medical expert, and a vocational expert.  (R. 20, 31, 268-94).  On November 29, 2007, the ALJ filed a decision in which he found plaintiff has not been disabled within the meaning of the Act, and denied her applications.  (R. 20-27).

The ALJ found that plaintiff has not engaged in substantial gainful activity at any time since her applications, and that she has a "severe" combination of impairments including degenerative disc disease with a fusion surgery in 2000, muscle spasms in the shoulder, lung nodules, and myofascial pain syndrome, but that her combination of impairments neither meets nor equals the severity of a listed impairment.  (R. 22).  The ALJ considered and summarized the record evidence, plaintiff's and her mother's allegations regarding the severity of plaintiff's impairments, and the medical opinions of the medical expert and one of plaintiff's treating physicians, Dr. Gernon.  (R. 23-25).  The ALJ found that plaintiff has the residual functional capacity (RFC) for a limited range of light work with significant restrictions, and that she is unable to perform her past relevant

-2-

work, but that she can perform a significant number of jobs

existing in the economy represented by such jobs as a credit

checker, an order clerk, and a document preparer.  (R. 23, 25,

26).  Therefore he concluded that plaintiff is not disabled

within the meaning of the Act and the regulations, and denied her

applications.  (R. 26).

      Plaintiff sought and was denied Appeals Council review of

the decision.  (R. 7-10).  Therefore the ALJ's decision became

the final decision of the Commissioner.  Id.; Blea v. Barnhart,

466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial

review of the final decision.  (Doc. 1).

## II.  Legal Standard

      The court's review is guided by the Act.  42 U.S.C.

§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of

the Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive."  The court must determine whether

the factual findings are supported by substantial evidence in the

record and whether the ALJ applied the correct legal standard.

Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v.

Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial

evidence is more than a scintilla, but less than a preponderance,

and it is such evidence as a reasonable mind might accept to

support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200

(10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.

1988).  The court may "neither reweigh the evidence nor
substitute [it's] judgment for that of the agency."  White, 287
F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs.,
933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395
F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether
substantial evidence supports the Commissioner's decision,
however, is not simply a quantitative exercise, for evidence is
not substantial if it is overwhelmed by other evidence or if it
constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.
Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that she has a physical or mental impairment which
prevents her from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of
at least twelve months.  42 U.S.C. § 423(d).  The claimant's
impairments must be of such severity that she is not only unable
to perform her past relevant work, but cannot, considering her
age, education, and work experience, engage in any other
substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to
evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520,
416.920 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir.
2004); Ray, 865 F.2d at 224.  "If a determination can be made at
any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Williams

v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines

whether claimant has engaged in substantial gainful activity

since the alleged onset, whether she has severe impairments, and

whether the severity of her impairments meets or equals the

severity of any impairment in the Listing of Impairments (20

C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If

plaintiff's impairments do not meet or equal the severity of a

listing, the Commissioner assesses claimant's RFC.  20 C.F.R.

§§ 404.1520, 416.920.  This assessment is used at both step four

and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates

steps four and five--whether the claimant can perform her past

relevant work, and whether she is able to perform other work in

the economy.  Williams, 844 F.2d at 751.  In steps one through

four the burden is on claimant to prove a disability that

prevents performance of past relevant work.  Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751

n.2.  At step five, the burden shifts to the Commissioner to show

other jobs in the national economy within plaintiff's capacity.

Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in failing to consider the

medical opinion of one of plaintiff's treating physicians, Dr.

Davis (Pl. Br. 10-11); in failing to fully and fairly develop the record with regard to plaintiff's mental impairments, id. at 11-12; and in stating that plaintiff's use of only over-the-counter Advil "is 'inconsistent with her alleged severe pain,'" and that there is no evidence of "significant or disabling adverse side effects on [sic] medication."   Id. at 12-13(quoting ("Decision, page 6, par. 1")).[1]   The Commissioner argues that the ALJ properly considered the credibility of plaintiff's allegations (Comm'r Br. 11-13); that plaintiff did not allege disability due to mental impairments and, therefore, the ALJ was under no obligation to develop the record in that regard, id. at 14-15; that the ALJ properly assessed plaintiff's RFC, id. at 16; and that although the ALJ did not explicitly mention Dr. Davis, he "essentially adopted the limitations expressed by Dr. Davis" in his RFC assessment.   Id. at 17.   Plaintiff filed a reply brief in which she argued that the ALJ did not adopt the limitations expressed by Dr. Davis (Pl. Br. 1-2), and that "Four treating health care providers of Lierz noted mental health symptoms," and the ALJ was on notice to develop the record with regard to mental

---

[1]Plaintiff's citation to the individual page numbers of the decision, or to the "Fact" number(s) from plaintiff's "Statement of Facts" is not particularly helpful to the court, for the court's task is to review the administrative record, and a citation to the record page where the information appears is much more helpful.

In the future, counsel should cite directly to the administrative record in his arguments, even when the "facts" have been cited earlier in plaintiff's brief.

impairments.  Id. at 3.  The court finds remand is necessary

because the ALJ did not apply the correct legal standard in

evaluating the medical opinions.  However, it declines to address

plaintiff's remaining allegations of error.

## III.  Evaluation of Medical Opinions

"Medical opinions are statements from physicians and

psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of [a claimant's]

impairment(s) including [claimant's] symptoms, diagnosis and

prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such

opinions may not be ignored and, unless a treating source opinion

is given controlling weight, all medical opinions will be

evaluated by the Commissioner in accordance with factors

contained in the regulations.  Id. §§ 404.1527(d), 416.927(d);

Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv.,

Rulings 123-24 (Supp. 2008).

A physician who has treated a patient frequently over an

extended period of time (a treating source)[2] is expected to have

greater insight into the patient's medical condition.  Doyal v.

---

[2]The regulations define three types of medical sources:
    "Treating source:"  a medical source who has provided the
claimant with medical treatment or evaluation in an ongoing
treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
    "Nontreating source:"  a medical source who has examined the
claimant, but never had a treatment relationship.  Id.
    "Nonexamining source:"  a medical source who has not
examined the claimant, but provides a medical opinion.  Id.

Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion

of an examining physician [(a nontreating source)] who only saw

the claimant once is not entitled to the sort of deferential

treatment accorded to a treating physician's opinion."  Id. at

763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).

However, opinions of nontreating sources are generally given more

weight than the opinions of nonexamining sources who have merely

reviewed the medical record.  Robinson v. Barnhart, 366 F.3d

1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456,

1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407,

412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789

(7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955,

963 (3d Cir. 1984)).

Where a treating source's opinion on the nature and severity

of the claimant's impairments (1) is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and

(2) is not inconsistent with the other substantial evidence in

the record, it will be given controlling weight.  20 C.F.R.

§§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's

Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2008).

The Tenth Circuit has explained the nature of the required

inquiry.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir.

2003).  The ALJ first determines "whether the opinion is 'well-

supported by medically acceptable clinical and laboratory

-8-

diagnostic techniques.'"   Id. at 1300 (quoting SSR 96-2p).   If

the opinion is well-supported, the ALJ must then determine

whether the opinion is consistent with other substantial evidence

in the record.   Id. (citing SSR 96-2p).   "[I]f the opinion is

deficient in either of these respects, then it is not entitled to

controlling weight."   Id.

     If the treating source opinion is not given controlling

weight, however, the inquiry does not end.   Id.   It is "still

entitled to deference and must be weighed using all of the

factors provided in 20 C.F.R. § 404.1527 and 416.927."   Id.

Those factors are: (1) length of treatment relationship and

frequency of examination; (2) the nature and extent of the

treatment relationship, including the treatment provided and the

kind of examination or testing performed; (3) the degree to which

the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon

which an opinion is rendered; and (6) other factors brought to

the ALJ's attention which tend to support or contradict the

opinion.   Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6),

416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211,

1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human

Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

The ALJ must give reasons for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. When a treating source's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[]' the treating physician's report, not the other way around." Goatcher, 52 F.3d at 289-90(quoting Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)). "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Watkins, 350 F.3d at 1301 (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) and Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

All evidence from nonexamining sources such as state agency physicians and medical experts is opinion evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f). ALJ's are not bound by such opinions but must consider them. Id., §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Such opinions must be evaluated using the regulatory factors previously enumerated and the ALJ must explain in the decision the weight given those opinions. Id., §§ 404.1527(f)(2)(ii & iii), 416.927(f)(2)(ii & iii).

**A.     The ALJ's Evaluation of Medical Opinions**

In conjunction with his credibility analysis, the ALJ discussed the opinion of the medical expert, Dr. Leigh:

> Dr. Leigh testified the evidence established that claimant suffered from a myofascial syndrome with chronic low back and neck pain, but MRI was essentially normal, showing some disc bulging but no narrowing or

-10-

impingement in the spinal canal.  He testified that
there was evidence of pulmonary nodules, opining this
could be causing bone pain and shortness of breath, but
he also noted that pulmonary function studies were
normal.  He also offered an opinion as to claimant's
functional capacity, testifying that claimant should be
able to lift fifteen pounds occasionally and ten pounds
frequently, stand and walk two hours per workday, and
stand, walk and sit for no more than fifteen minutes at
a time.  He said that she should not work at heights or
around hazards.  He also testified that there was no
objective evidence of record to support a conclusion
that claimant would be unable to work a full forty-hour
week.

(R. 24).  In stating reasons for disbelieving plaintiff's

allegations of symptoms, the ALJ stated that the record medical

evidence was "consistent with and supportive of the testimony of

the medical expert."  Id.

Thereafter, the ALJ purported to discuss the opinion

evidence:

As for the opinion evidence, the undersigned has
carefully considered the reports of treating physician
Dr. Rebecca Gernon MD., that claimant is disabled and
unable to lift even ten pounds or stand, sit or walk
one hour.  However, the undersigned cannot give
significant weight to this opinion as it is
inconsistent with the minimally abnormal medical signs
and findings, the inconsistencies in the record, and
the thoughtful testimony of the medical expert, all of
which is set forth above.

(R. 25).

Although the record contains a "Residual Functional Capacity

Assessment - Physical" completed by a state agency physician (R.

184-91), and a "Physical Health Questionnaire" completed by a

-11-

treating physician, Dr. Davis (R. 192-994), the decision contains no further mention or discussion of any medical opinions.

### B.    Analysis

The court finds that the ALJ did not apply the correct legal standard to evaluate the medical opinions, and remand is necessary for the Commissioner to correct this deficiency.

Both parties agree that the record contains opinions from two treating sources, Dr. Gernon and Dr. Davis.  In appropriate circumstances the opinions of treating sources may be worthy of controlling weight, but there is no indication that the ALJ considered whether either treating source opinion in this case was worthy of controlling weight.  Even assuming the ALJ determined Dr. Gernon's opinion was unworthy of controlling weight because "it is inconsistent with minimally abnormal medical signs and findings"[3] (R. 25), the decision provides no indication the ALJ was even aware of Dr. Davis or her opinion, or that the ALJ considered Dr. Davis's opinion either individually, or in conjunction with the opinion of Dr. Gernon.  Although the Commissioner asserts the ALJ essentially adopted the limitations expressed by Dr. Davis, that assertion cannot be accepted because Dr. Davis stated plaintiff may sit for only fifteen minutes (R.

---

[3]While the court is willing to make this assumption for the sake of argument, it notes there is a serious question whether the ALJ's finding actually reflects consideration of either criterion necessary to deny controlling weight.

-12-

193)[4] while the ALJ found plaintiff capable of sitting for twenty

to thirty minutes at a time.  (R. 23).  The significance of this

difference is revealed by the vocational expert's testimony that

if plaintiff must alternate positions at fifteen minute

intervals, no work would be available.  (R. 290).

    Moreover, it is not clear the ALJ weighed the medical

expert's opinion relative to the treating source opinions.  The

ALJ stated, "As for the opinion evidence," and proceeded to

consider only Dr. Gernon's opinion.  (R. 25).  Although he

discounted Dr. Gernon's opinion in part because it was

inconsistent with "the thoughtful testimony of the medical

expert," he did not specifically acknowledge that a treating

source opinion is generally worthy of deference and greater

weight than the opinion of a nonexamining source such as the

medical expert.  Further, there is no indication the ALJ made any

effort to examine the medical expert's opinion to explain why it

should 'outweigh' the treating physician's opinion--he merely

stated that the treating source's opinion was inconsistent with

the "thoughtful testimony of the medical expert."  (R. 25).

Although the ALJ did not specifically address Dr. Davis's

opinion, each of the court's findings with regard to the relative

---

[4]The court notes that this is also consistent with the ALJ's
summary of the medical expert's opinion that plaintiff can stand,
walk, and sit for no more than fifteen minutes at a time.  (R.
24); compare (R. 276)("standing and walking or even sitting would
be at 15 minutes at a time").

weighing of the medical expert's opinion and Dr. Gernon's opinion applies with equal force to the lack of relative weighing of Dr. Davis's opinion and the medical expert's opinion.

Finally, even assuming the ALJ properly declined to afford controlling weight to the treating source opinions, there is no indication the ALJ engaged in relative weighing of <u>all</u> of the medical opinions in accordance with the regulatory factors.  The court will not require a specific factor-by-factor evaluation of the evidence and the opinions so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1258 (10th Cir. 2007)(quoting <u>Watkins</u>, 350 F.3d at 1300).  In this case, however, the ALJ specifically assigned weight to only one opinion, that of Dr. Gernon; assigned the greatest weight to the opinion of the medical expert by default without engaging in any specific analysis; and failed completely to weigh the opinions of the treating source, Dr. Davis, and of the state agency physician.  Remand is necessary for the Commissioner to properly weigh the medical opinions.

**IT IS THEREFORE RECOMMENDED** that the decision be REVERSED and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this <u>16th</u> day of June 2009, at Wichita, Kansas.


                                   s/ Donald W. Bostwick
                                   **DONALD W. BOSTWICK**
                                   **United States Magistrate Judge**